UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLA SHANGLE,

       Plaintiff,                                            Hon. Gordon J. Quist

v.                                                                           Case No. 1:16-cv-846

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence

supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 39 years of age on her alleged disability date as well as the date her insured status expired. (PageID.199, 273, 815). She successfully completed high school and worked previously as a stock clerk and shipping clerk. (PageID.830-31). Plaintiff applied for benefits on September 9, 2010, alleging that she had been disabled since September 1, 2007, due to degenerative disc disease, fibromyalgia, osteoarthritis, bursitis, and irritable bowel disease. (PageID.199-205, 225, 273).

Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.134-97). On April 20, 2012, Plaintiff appeared before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert. (PageID.76-132). In a written decision dated June 28, 2012, the ALJ denied Plaintiff's claim. (PageID.60-69). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.40-44). Plaintiff thereafter initiated legal action in this Court challenging the denial of her claim for benefits. On March 31, 2015, the Honorable Gordon J. Quist reversed the ALJ's decision and remanded this matter for further administrative action. (PageID.928-40).

On August 28, 2015, ALJ Condon conducted another administrative hearing at which testimony was offered by Plaintiff and a vocational expert. (PageID.840-922). In a written decision dated October 9, 2015, ALJ Condon again denied Plaintiff's application for disability benefits. (PageID.812-32). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.796-802). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

3

Plaintiff's insured status expired on December 31, 2007. (PageID.815; *see also*, 42 U.S.C. § 423(c)(1)). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that through the date her insured status expired, Plaintiff suffered from: (1) degenerative disc disease of the cervical spine; (2) left shoulder impingement and acromioclavicular arthritis status post arthroscopic surgery; (3) depression; (4) anxiety; and (5) a personality disorder, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.815-18).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired, she retained the capacity to perform light work subject to the following limitations: (1) she could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; (2) during an 8-hour workday, she could sit and stand/walk for 6 hours each; (3) she could frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (4) she could occasionally climb ladders, ropes, and scaffolds; (5) she could occasionally reach overhead with her left upper extremity; (6) she was limited to the performance of simple, routine work that

5

involved making simple work-related decisions; and (7) she was able to tolerate routine workplace changes. (PageID.818).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 348,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.905-08). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert also testified that if Plaintiff's ability to stand/walk and lift/carry were even further impaired, there still existed at least 165,000 jobs in the

national economy which Plaintiff could perform. (PageID.908-11). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

I.        **Relevant Medical Evidence**

An MRI of Plaintiff's cervical spine, performed on March 14, 2004, revealed "minimal" degenerative changes with "no focal disc protrusion, canal stenosis, or neural compression." (PageID.509). An MRI of Plaintiff's left shoulder, performed on November 19, 2005, revealed "minor" degenerative changes with "no evidence for rotator cuff tear or tendinopathy." (PageID.501). X-rays of Plaintiff's left shoulder, taken the same day, were "normal." (PageID.500). Treatment notes dated December 23, 2005, indicate that Plaintiff was experiencing left shoulder rotator cuff tendinitis. (PageID.301). Plaintiff was provided a cortisone injection. (PageID.301). In the spring and summer of 2006, Plaintiff participated in physical therapy to alleviate neck, back, and shoulder pain. (PageID.329-31).

The results of an ultrasound examination of Plaintiff's abdomen, performed on May 21, 2006, were "normal." (PageID.490). On May 22, 2006, Plaintiff participated in an esophagogastroduodenoscopy examination, the results of which revealed "trivial gastritis." (PageID.513). The results of the examination were "otherwise normal." (PageID.513).

On November 7, 2006, Plaintiff reported experiencing upper back and shoulder pain. (PageID.335-37). The results of a physical examination were unremarkable. (PageID.336). X-rays of Plaintiff's left shoulder revealed no evidence of abnormality. (PageID.336-37). X-rays of Plaintiff's cervical spine revealed "mild disc space narrowing," but were otherwise unremarkable. (PageID.337). An MRI of Plaintiff's left shoulder revealed no evidence of abnormality. (PageID.337). The doctor concluded that "the key to treatment is

7

exercise" and Plaintiff "just needs to work on endurance exercise either with Thera-Bands or consider water exercise such as swimming." (PageID.337). The doctor further noted that Plaintiff "needs to continue exercise or [her] symptoms might increase in intensity and actually spread." (PageID.337).

An ultrasound examination of Plaintiff's abdomen, performed on February 16, 2007, revealed no abnormalities. (PageID.490).

An MRI of Plaintiff's left shoulder, performed on April 3, 2007, revealed that Plaintiff's "left shoulder joint appears nearly normal." (PageID.487). X-rays of Plaintiff's left-shoulder, taken the same day, were "normal." (PageID.489).

On August 13, 2007, Plaintiff, who is right-hand dominant, reported experiencing "problems with her left shoulder." (PageID.349-50). An examination revealed that Plaintiff was experiencing left shoulder impingement and AC arthritis. (PageID.350). The doctor recommended that Plaintiff undergo arthroscopic surgery on her left shoulder. (PageID.350).

On September 7, 2007, Plaintiff underwent arthroscopic surgery on her left shoulder. (PageID.352-53). Treatment notes dated October 16, 2007, indicate that Plaintiff's left shoulder "looks very good." (PageID.366). Treatment notes dated April 28, 2008, reveal that Plaintiff exhibited full range of motion in her left shoulder with no evidence of mechanical abnormality. (PageID.358).

On June 11, 2008, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed "mild" to "moderate" degenerative changes with "no significant central canal narrowing." (PageID.386). On July 22, 2008, Plaintiff reported that she

was experiencing "left shoulder, left neck, and left arm pain." (PageID.383). A physical examination revealed the following:

> She does have significant point tenderness, which reproduces hyperemia and referred pain pattern in the left arm and three locations in her upper thoracic region on the left and upper trapezius fibers. Hawkins and Neer impingement sign are negative. She has a negative empty can test on the left. Negative Spurling's sign. Posterior element testing of the cervical spine with extension and side-bending does not reproduce any significant pain at this time. Sensation is intact in the left lower and left upper extremity. Deep tendon reflexes are intact.

(PageID.383).

On August 22, 2008, Plaintiff participated in a bone scan examination of her cervical spine, the results of which revealed "degenerative changes" and "mild facet arthrosis." (PageID.380). On September 3, 2008, Plaintiff reported her neck/shoulder pain as 1/10. (PageID.378). The doctor concluded that Plaintiff was experiencing "cervicocranial as well as cervicothroacic pain and dysfunction." (PageID.379). The doctor also noted that Plaintiff exhibited "poor posture and body mechanics." (PageID.379).

Treatment notes dated October 24, 2008, indicate that Plaintiff experiences "abdominal pain" when she experiences stress or eats "too many sweets and pizza with sausage." (PageID.374). On November 19, 2008, Plaintiff reported experiencing pain in her neck and left shoulder. (PageID.376-77). The results of a physical examination were "quite unremarkable, some tenderness noted in the upper interscapular region, but no scapular winging noted, no spinous process tenderness, normal cervical range of motion and a normal neurologic examination of the left upper extremity." (PageID.377).

9

**II.        The ALJ Properly Assessed the Medical Opinion Evidence**

As noted above, Plaintiff's insured status expired on December 31, 2007, and to establish entitlement to benefits, Plaintiff must demonstrate that she was disabled prior to the expiration of her insured status. On three occasions between August 1, 2011, and August 10, 2015, Dr. Fredric Reyelts completed forms in which he opined as to Plaintiff's functional abilities. (PageID.684-91, 794, 1612-19). The ALJ assigned limited weight to Dr. Reyelts' opinions. (PageID.825-27). Plaintiff asserts that she is entitled to relief because the ALJ did not provide sufficient reasons for discounting the opinions of her treating physcan.

The treating physician doctrine recognizes that medical professionals who have a long hertory of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*,

10

1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

A review of Dr. Reyelts' opinions and the relevant medical record reveals that the ALJ's assessment of the doctor's opinions is supported by substantial evidence. To the extent Dr. Reyelts simply asserts that Plaintiff is disabled or unable to work, such is entitled to no weight as the determination whether a claimant is disabled is a matter reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). To the extent that Dr. Reyelts articulated functional limitations which suggest that Plaintiff was more impaired than the ALJ recognized, such opinions are not supported by the medical record.

On August 1, 2011, Dr. Reyelts reported that during an 8-hour workday, Plaintiff could sit for 2 hours and stand/walk for 2 hours. (PageID.689). The doctor reported that Plaintiff could grasp, push/pull, or reach at or above shoulder level with her left upper extremity for less than one hour each. (PageID.689). The doctor reported that Plaintiff required "one 20-minute rest period per hour" and must "lie down or rest for substantial periods of time during the day." (PageID.690). Dr. Reyelts indicated that Plaintiff suffered this level of dysfunction since January 2004. (PageID.688).

On April 16, 2012, Dr. Reyelts reported that Plaintiff suffered from irritable bowel disease which was related to her fibromyalgia which, "by September 2007 . . .precluded [Plaintiff] from being able to perform any work on a sustained and competitive basis." (PageID.794).

On August 10, 2015, Dr. Reyelts reported that during an 8-hour workday, Plaintiff could sit for 2 hours and stand/walk for 1 hour. (PageID.1617). The doctor reported that

Plaintiff could not perform pushing or pulling activities with either of her upper extremities. (PageID.1618). The doctor reported that Plaintiff must "lie down or rest for substantial periods of time during the day" and, furthermore, required "complete freedom to rest frequently without restriction" during the workday. (PageID.1618). Dr. Reyelts indicated that Plaintiff suffered this level of dysfunction since January 2004. (PageID.1615).

As the medical evidence discussed above makes clear, Dr. Reyelts' opinions are simply not supported by the medical evidence. While Dr. Reyelts opinions may accurately reflect Plaintiff's level of functioning as of 2011, 2012, or 2015, the medical record does not support that Plaintiff was so limited prior to the expiration of her insured status. While there is evidence that Plaintiff's condition began to worsen following a February 2010 automobile accident, there is nothing the record to support the argument that any diminution in functioning Plaintiff experienced after the expiration of her insured status relates to the time period prior thereto. In sum, the ALJ's determination to afford limited weight to Dr. Reyelts' opinions, on the ground that such were inconsistent with the medical evidence, is supported by substantial evidence.

Plaintiff also faults the ALJ for affording limited weight to the opinion expressed by Dr. Ramin Rahimi in a February 23, 2012 report. (PageID.716-20). Dr. Rahimi reported that Plaintiff was incapable of performing work at any level on a sustained basis and had been so limited since December 2004. (PageID.716-20). The ALJ discounted this particular opinion on the ground that it was inconsistent with the medical evidence. (PageID.827-28). While Dr. Rahimi asserted that Plaintiff had been disabled since December 2004, the doctor acknowledged that he did not first examine Plaintiff until January 2010, more than two years after the expiration of Plaintiff's insured status. (PageID.716-20). The doctor has not articulated how he was able

12

to assess the extent to which Plaintiff could function more than five years before he first examined her.  Furthermore, as discussed above, to the extent that Dr. Rahimi's opinion concerns Plaintiff's ability to function prior to the expiration of her insured status, such is simply contradicted by the medical evidence.  Accordingly, the ALJ's decision to afford little weight to Dr. Rahimi's opinion is supported by substantial evidence.

Plaintiff argues that the ALJ failed to afford appropriate weight to the opinion expressed by Harley Dorman, Ed.D.  On August 13, 2015, Dr. Dorman reported that Plaintiff was unable to work due to emotional impairments.  (PageID.1605-11).  The ALJ assigned this opinion reduced weight on the ground that the doctor's opinion was neither supported by the record nor relevant to the time period prior to the expiration of Plaintiff's insured status.  (PageID.828-29).  Dr. Dorman did not first examine Plaintiff until October 2010, almost three years after the expiration of her insured status.  (PageID.1611).  There is nothing in the record supporting the argument that the limitations articulated by Dr. Dorman, even if such are credible, were present prior to the expiration of Plaintiff's insured status.  Thus, the ALJ's decision to afford limited weight to Dr. Dorman's opinion is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ improperly discounted the opinions of two consultants who examined Plaintiff in July 2015.  (PageID.1584-94, 1596-1604).  Even if these doctors' opinions are interpreted as being inconsistent with the ALJ's RFC determination, neither doctor indicated that the limitations they articulated applied or existed prior to the expiration of Plaintiff's insured status more than *seven years* prior.  The ALJ discounted these opinions on the ground that they were not relevant to the time period prior to the expiration of Plaintiff's insured status.  This determination is supported by substantial evidence.

### III.        The ALJ Properly Evaluated Plaintiff's Impairments

As noted above, the ALJ determined that Plaintiff suffers from multiple severe physical impairments. Plaintiff argues, however, that she is entitled to relief because the ALJ failed to also find that she suffers from fibromyalgia and irritable bowel syndrome.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. Where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Commissioner of Social Security*, 528 Fed. Appx. 425, 427 (6th Cir., May 22, 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments. . .does not constitute reversible error").

A review of the ALJ's decision makes clear that he considered the entire record and all Plaintiff's impairments and limitations. Moreover, there is no evidence that prior to the expiration of Plaintiff's insured status, Plaintiff suffered from fibromyalgia or irritable bowel syndrome or that such imposed more than minimal impact on her ability to function. Accordingly, this argument is rejected.

### IV.        The ALJ Properly Relied on the Testimony of a Vocational Expert

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is unsupported by the evidence. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray

Plaintiff's physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).   The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 348,000 such jobs in the national economy.   The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert.   The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within such time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Dated: March 7, 2018

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge